Pomeroy, Patterson, Jacobs & Company, for use of H. C. Hower, Appellant, *v.* W. N. Sterrett, President of Juniata Valley Canning Co., George L. Hower, Secretary of Juniata Valley Canning Co., W. N. Sterrett, George L. Hower, C. F. Hinkel, Samuel A. Thomas, Joseph Rothrock, Simon Ulsh, W. B. Horning, Emil Schott, William Puffenberger, D. W. Harley, A. J. Moist, M. H. Varnes, William Guss, J. E. Jamison, Wellington Smith, James D. Williams, J. M. Hower and William B. McCahan.

[Marked to be reported.]

*Execution—Direction to sheriff—Contribution.*

The plaintiff in an execution may properly assist the sheriff in the collection of a debt due him by suggestions as to where property may be found, as to which of several defendants has personal property that may be reached by levy, or in any other proper and pertinent manner; but he may not settle controversies between the defendants by intervening between them so as to destroy the right of contribution which the law gives them.

*Corporation—Increase of debt—Agreement of stockholders to pay debt— Contribution—Execution.*

Eighteen stockholders of a corporation became sureties for the payment of the debt of the company, and confessed judgment against themselves for the sum.  The debt had been contracted about three years prior to the confession of the judgment, in an illegal manner, by three of the directors, who joined in the confession of judgment.  Part of the judgment was paid, and the balance was assigned to H., who had purchased the judgment as agent of fifteen of the defendants.  He issued execution upon the judgment and instructed the sheriff to proceed against the three defendants under whose directorship he alleged the debt had been illegally created.  *Held*, that it was proper for the court below to restrain the sheriff from collecting from the three directors more than their equal shares of the amount due, unless he should be unable to collect the share of one or more of the other defendants.

Argued May 25, 1897. Appeal, No. 210, Jan. T., 1897, by plaintiffs, from order of C. P. Juniata Co., Dec. T., 1895, No. 50, directing manner of executing fi. fa. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Petition to restrain sheriff from levying as directed by the plaintiff in the execution.

The facts appear by the opinion of the Supreme Court.

The court made the following order:

And now, April 27, A. D. 1897, this cause having come on to be heard on petition, answer, replication and proofs, and having been argued by counsel, upon due consideration the rule is made absolute; and it is further ordered and decreed that H. C. Hower, the use plaintiff in judgment No. 50, December term, 1895, in the court of common pleas of Juniata county, be and he is hereby enjoined and restrained from collecting the whole of the balance of debt, interest and costs, to wit: the sum of $7,856.61, with interest thereon from November 9, A. D. 1896, from W. N. Sterrett, William Puffenberger and William B. McCahan, but the debt, interest and costs of said judgment shall be paid by the eighteen cosureties, (naming them) in equal shares and proportions, and the sheriff is ordered and directed to levy upon and collect the said debt, interests and costs, by virtue of fi. fa., No. 6, of December term, 1896, or any alias or pluries writ of fieri facias which may be issued on said judgment, from the goods and chattels, lands and tenements of each and all of said defendant cosureties, in equal portions, and should any of said cosureties be unable to pay their proper proportions, or goods and chattels, lands or tenements, shall not be found, out of which to levy the same, then the deficiency shall be collected from the remaining cosureties in equal portions. And it is further ordered that H. C. Hower pay the costs of this rule.

*Error assigned* was above order.

*J. Howard Neely* and *Charles Hower*, for appellant.—If persons not members of a corporation whose original certificate has not been recorded, and who have no knowledge of the fact that it is an incorporated company, deal with such company, they

can enforce their contracts against it as a partnership: Guckert v. Hacke, 159 Pa. 303; Bank v. Crowell, 177 Pa. 313; Spahr v. Bank, 94 Pa. 429.

Under the rule laid down in Grubb v. Mahoning Navigation Co., 14 Pa. 304, the moment the letters patent are issued the subscribers become a corporation for every practical purpose: First Nat. Bank v. Almy, 117 Mass. 476: Water Supply Co. v. Braintree, 146 Mass. 482; Tarbell v. Page, 24 Ill. 47; Ramsey v. Ins. Co., 55 Ill. 311; Pierce v. Hacke, 49 Leg. Int. 288.

As to the plaintiff, all of the defendants are debtors, and he is not obliged to regard them as sureties or principals. It is true, if all were sureties, and one or more paid the debt, they would have a right to subrogation against the others: Agnew v. Bell, 4 Watts, 32; Moore v. Bray, 10 Pa. 519; Martin v. Frantz, 127 Pa. 389; Baily's Est., 156 Pa. 634; Croft v. Moore, 9 Watts, 451; Mosier's App., 56 Pa. 76; Hess's Est., 69 Pa. 272; Wright v. Sewing Machine Co., 82 Pa. 80; Arna's App., 65 Pa. 72; Act of April 22, 1856, P. L. 533, sec. 9; Phelps's App., 98 Pa. 546; Miligan's App., 104 Pa. 503; Wilson v. Ritchie, 4 W. N. C. 37; Roddy's App., 72 Pa. 98; Shannon v. Com., 8 S. & R. 444.

The indebtedness so contemplated by the act of 1894 is not merely the extraordinary or "bonded indebtedness" of the corporation, but also its ordinary debts: Green v. Whitehead, 5 Dist. Rep. 613.

This judgment was acquired by H. C. Hower, not in the capacity of a stockholder, but as an individual purchaser: Act of April 7, 1870, P. L. 58; Phila. & Balt. Cent. R. R. Co.'s App., 70 Pa. 355; Bayard's App., 72 Pa. 453; Fox v. Hempfield R. R. Co., 28 Leg. Int. 4; Hill v. Frazier, 22 Pa. 320; Githers v. Clarke, 158 Pa. 616; Hoopes v. Stidham, 13 W. N. C. 266.

*Robert McMeen* and *L. E. Atkinson*, of *Atkinson & Pennell*, for appellees.—The relation of cosureties is one of mutual trust and confidence, and from it springs their liability to contribute equally to the payment of their principal's debt, as well as their right to equally participate in an indemnity that may be obtained from him directly or indirectly, by either or all of them: Shaeffer v. Clendenin, 100 Pa. 567; Story's Equity Jur. sec. 493.

The act of the appellant in securing a man of straw to take this judgment for the purpose of oppressing the appellee is little short of criminal: Com. v. Carlisle, Brightly's Rep. 36; Confer v. McNeal, 74 Pa. 112; Lowe v. Dalrymple, 117 Pa. 564; Merchants Nat. Bank v. Tinker, 158 Pa. 17.

It has been repeatedly held that in the case of manufacturing corporations organized under the act of April 7, 1849, and its supplements, after which this section of the act of 1874 is copied, that the remedy for the collection of debts of the corporation from stockholders and directors is special, and the requirements of the statute must be strictly followed: Hoard v. Wilcox, 47 Pa. 51; Mansfield Iron Works v. Willcox, 52 Pa. 377; Wagner v. Corcoran, 2 Dist. Rep. 440; Nat. Loan & Bldg. Soc. v. Lichtenwalner, 100 Pa. 104.

Statutes which impose individual liability on stockholders for the debts of the corporation are to be strictly construed: O'Reilly v. Bard, 105 Pa. 569; Means's Appeal, 85 Pa. 78.

The case of Guckert v. Hacke, 159 Pa. 306, and New York National Exchange Bank v. Crowell, 177 Pa. 313, both hold that failure to record the certificate of incorporation has the effect of defeating the exemption of the corporators from the debts of the corporation and, for a much stronger reason, penalties growing out of the conditions of corporate existence should not be inflicted.

Forfeitures are odious in law, and are enforced only where there is the clearest evidence that that was meant by the stipulations of the parties: Helme v. Ins. Co., 61 Pa. 111; Kister v. Ins. Co., 128 Pa. 567; Girard Life Ins. Co. v. Mut. Life Ins. Co., 97 Pa. 30; Watts's App., 78 Pa. 370.

The right of the court of common pleas to stay an execution, or to prevent one from issuing on a judgment of said court, has frequently been recognized, and is very common in practice: McCann v. Farley, 26 Pa. 173; Chambers v. Harger, 18 Pa. 17; Herman on Executions, 612; Loomis v. Lane, 29 Pa. 242; Harrison v. Soles, 6 Pa. 393; Struthers v. Lloyd, 14 Pa. 216; 1 Troubat & Haly's Prac. page 848 (4th ed.); Morris v. Mettaline Land Co., 164 Pa. 326.

The court had ample legal authority for deciding that the appellees had a right to subrogation if they would pay the entire debt held by the use of plaintiff: Slaymaker v. Gundacker's Exrs., 10 S. & R. 74.

It is denied by the appellees that any losses occurred out of the transactions of 1892, but if such losses did occur the fact is immaterial. The directors were not responsible for the decline in the price of commodities then going on : Spering's App., 71 Pa. 21.

OPINION BY MR. JUSTICE WILLIAMS, October 11, 1897 :

The Juniata Canning Company was incorporated in May, 1892, with an authorized capital of $4,000. Only about $3,000 of this amount was paid in, but the company entered at once, and somewhat actively, upon the business for which it had been organized. Suitable buildings and machinery were purchased and vegetables, fruits and berries bought and canned. The capital was grossly inadequate and, at the end of the operations for 1892, the company was owing about $12,000 for money borrowed from the legal plaintiffs to carry on its operations. There is no suggestion that the money so borrowed was not honestly expended in the business of the company. Neither the personal integrity nor the business methods of the directors has been assailed. They were evidently inexperienced in the business they were to conduct, and they were without capital to carry it on. They were compelled to borrow money or to close their business at the outset. They chose to borrow money. Their decision rendered them personally liable to those who gave them credit if they were then organized as a corporation. If they were a partnership their action bound all the partners. The business was continued in the same manner until October, 1895, when the company failed, with an indebtedness for borrowed money of about $18,000. This was all due to the legal plaintiffs. In order to secure them, an agreement was entered into in pursuance of which the company executed a confession of judgment for a sum sufficient to cover its indebtedness to them, and eighteen of the stockholders became sureties for the payment of the debt by the company, and signed a warrant of attorney confessing judgment against themselves as individuals for the same sum. Judgment was entered against them by the plaintiffs and, shortly after, the balance then due upon the judgment, which was about $8,000, was assigned to H. C. Hower, the use plaintiff. He at once issued a writ of fi. fa. and instructed the sheriff to make the money out of the property of three of the

defendants. This instruction rested upon the theory that the other defendants had a right to go back for three years anterior to the execution of the judgment bond or note on which the judgment had been entered, determine for themselves that the three defendants who had been directors in 1892 had contracted a debt illegally; that the balance now due on the judgment was for that debt, and that, as among themselves, the fifteen stockholders were not liable for the indebtedness so contracted, although they had evidently acquiesced in the necessity and propriety of contracting it at the time, and in the continuance of the same course of management down to the failure in the fall of 1895.

Whatever may be said about the question of the liability of these three directors by reason of their disregard of the law limiting their authority to contract debts for their corporation, it is very clear that the subject can in no sense be treated as an original equity existing at the time this judgment was confessed. There is nothing before us to indicate that these fifteen defendants ever objected to the credits obtained by the directors in 1892. The prima facies is all the other way. The money went into the business, and the stockholders for three years more continued the same methods, borrowing money with which to carry on the canning of fruits and vegetables, and paying as much as they could when the year's product or any considerable part of it was sold. It was the only possible method in which, with the insignificant capital of the company, any business could have been carried on by it. This does not make the illegal loans proper, but it closes the mouth of those stockholders who did not object to this way of supplying the corporation with necessary funds, and who for three years more continued the same practice of illegal borrowing.

This consideration alone is sufficient to dispose of this case. The judgment was entered upon the express promise of eighteen stockholders to pay to the lenders the entire balance due upon all these loans without regard to their legality. This was an adoption of them as binding upon the corporation and all its members, and a waiver of all questions about their amounts or their regularity that might have been raised at that time.

Nothing has taken place since to affect the position of any of these defendants. They remain liable just as they agreed to be

for the payment of the whole sum due upon the judgment. Each and every one is bound alike; and if it should happen that one of them should be compelled to pay more than his share, he may be subrogated to the rights of the plaintiff as to such excess for the purpose of enabling him to have contribution from his codefendant, and so equalize the common burden. The learned judge of the court below was right therefore in restraining the sheriff from carrying into execution instructions that were illegal and oppressive. But it is urged that the plaintiff in a judgment has a right to direct the sheriff in the execution of process issued upon it. In a general way this is true. The plaintiff may properly assist the sheriff in the collection of a debt due him by suggestions as to where property may be found, as to which of several defendants has personal property that may be reached by levy, or in any other proper and pertinent manner. But a plaintiff ought not to settle other controversies than his own by an attempt to intervene between defendants and deprive them of the right of contribution which the law gives them. His position is adverse to the defendants, and any of them whom he compels to pay more than his share of the joint indebtedness has a right to subrogation or contribution which the plaintiff cannot take away, and which he has no right to hinder or obstruct. It is very clear upon the evidence that the equitable plaintiff is a volunteer who has no right to raise any question about the legality of the original loan. He is not only a volunteer, but he is an agent for fifteen of the defendants, at whose instance and on whose behalf he has purchased the judgment for the avowed purpose of relieving them of any liability whatever. This he claims the right to do by raising a question that both he and those whom he represents are in no position to raise. Our question is therefore whether he can defend his instructions to the sheriff on the ground of the illegal character of the loans made for the corporation three years before this judgment was confessed, notwithstanding the fact that it was confessed for the express purpose of securing the payment of the same loans. The absurdity of the position is perfectly apparent. As to the legal plaintiffs this judgment is paid. As to H. C. Hower it is not paid in fact, although as to fifteen eighteenths of it there seems to be an understanding between him and those of the defendants whom he really represents, and for whose benefit he

purchased the judgment. As to three eighteenths, neither payment in fact nor defense of any sort is alleged.

The order of the court below restraining the sheriff at this time from collecting from the three defendants named more than their equal shares of the amount due is affirmed. As to any excess over their one eighteenth part each of the debt that may be hereafter collected from them or either of them, they will be entitled to contribution from their codefendants. No reason for discrimination between the defendants as to the extent of their liability has been shown or suggested, and they must meet their undertaking in accordance with its terms as cosureties for the corporation to which they belonged, and whose reverses they have bound themselves to share.

The discussion of the other questions raised becomes unnecessary as the view we have taken of the case is conclusive upon the rights both of the use plaintiff and the defendants.