Smith et al. *v.* Smith, Jr. et al., Appellant.

546

Argued December 9, 1930.

Be-
fore Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*John C. Gilpin* of *Graham and Gilfillan,* for appellants.—There was no appropriation of the value of the 10 shares of building and loan stock against the loan of the first mortgage: Orient Association v. Freud, 298 Pa. 431; Consolidated Assn. v. Shipley, 95 Pa. Superior Ct. 232.

*Robert Levin,* for appellees.—The appellant is not entitled to be subrogated to an amount larger than it contributed to the satisfaction of the mortgage: Royal Arcanum v. Cornelius, 198 Pa. 46; Commonwealth v. Horan, 45 Pa. Superior Ct. 608; Wagner v. Elliott, 95 Pa. 487; McCleary's Appeal, 20 W. N. 547.

OPINION BY LINN, J., February 27, 1931:

Prior to his death, George W. Smith, Sr., owned 2113 Carpenter Street, Philadelphia. He mortgaged it to the Broad and Chestnut Streets Building and Loan Association (herein called Broad association) as security for a $2,000 loan. On his death, intestate, the property descended to his children. On February 27, 1924, George W. Smith, Jr., one of the children, pretending to be George W. Smith, Sr., made and delivered a deed for the property to two grantees, D'Luge and Sloan, purporting to convey it to them for $5,800 with the understanding that he could buy the property back from them within four months for $6,200.

On June 9, 1924, D'Luge and Sloan executed and delivered a deed for the property to the fraudulent

Smith, who then made two mortgages of it, the first, in the sum of $4,500 to the Apex Building and Loan Association (herein called the Apex association), and, the second, in the sum of $1,500 to D'Luge and Sloan. As it was desired by the parties to that transaction, that the Apex association's mortgage should be a first mortgage, it became necessary to pay off and have satisfied the $2,000 mortgage held by the Broad association. Settlement was made on June 9, 1924 at the Liberty Title and Trust Company. The Apex association there paid the amount of money it had agreed to lend the fraudulent Smith for the $4,500 mortgage, and D'Luge paid a sum. The Broad association, though at whose request, does not appear, executed a statement of its account with George W. Smith, Sr., its mortgagor, who had subscribed for 10 shares of its stock. That statement, which was produced at the settlement, showed that by crediting the loan with $1,280.70 (the sum of dues paid and profits thereon), together with the mortgage satisfaction fee, there would be due the Broad association, June 9, 1924, the sum of $724.42.

The deed by which the fraudulent Smith purported to convey the property to D'Luge and Sloan, and the deed from them back to Smith, and the mortgages executed by Smith on June 9, 1924, were recorded. In 1925 judgments were entered against George W. Smith, Sr. in favor of the Apex association on the bond accompaning its mortgage, and also in favor of D'Luge and Sloan on the bond accompaning the mortgage they held. Smith, pretending to be George W. Smith, Sr., also executed and delivered a judgment note to one Udoff, also defendant, who entered judgment on it. Neither the deeds, mortgages nor judgments had any validity against plaintiffs.

As soon as the plaintiff-heirs of George W. Smith, Sr. learned of the fraud, they filed this bill against

various parties, among them, the Apex Building and Loan Association, and D'Luge and Sloan and Udoff, praying that the parties be restrained from enforcing their mortgages and judgments, and for their cancellation, etc. The court granted the relief sought, but directed that, as a condition of the decree, plaintiffs must pay to the Apex Building and Loan Association the sum of $724.42 with interest ($809.47 at the date of the decree). The Apex association appeals, contending that plaintiffs should have been ordered to pay to it $2005.12 instead of the sum awarded. We shall confine ourselves solely to that point, which is the only one stated in the questions involved.

In order that the Apex associations's $4500 mortgage might be the first lien of record, it became necessary to pay and satisfy the $2000 mortgage held by the Broad association. As has been stated, if the withdrawal value of the 10 shares of building association stock was credited on the mortgage, the plaintiffs would owe and be required to pay to that association $724.42 to obtain the satisfaction of the mortgage. The chancellor found the fact that $724.42 of the Apex association's money, put up at the settlement as a loan to the fraudulent Smith to be secured by a first mortgage, went in payment of that amount to the Broad association on its $2000 mortgage, and the balance came from D'Luge and Sloan. Appellant contends that the chancellor also made a finding inconsistent with that finding; that he found that all the money paid to the Broad association came from the money supplied by the Apex association for its $4500 mortgage.

We need not consider whether there is any inconsistency in the findings or its effect, if there is, because we regard the subject insignificant and immaterial in its bearing on the only question raised by appellant here, which is whether plaintiffs should pay

more than $724.42 to appellant. The Apex association had no relations of any kind with the plaintiffs; they did not require appellant to pay anything, knew nothing about it until afterward when the fraud perpetrated by their defendant brother was discovered; as to plaintiffs, the Apex association was a volunteer; McCleary's Appeal 20 W. N. C. 547; Campbell v. Foster Home 163 Pa. 609, 625, 635; Haverford B. & L. Assn. v. Fire Assn., 180 Pa. 522; Lackawanna Trust & Safe Deposit Company v. Gomeringer, 236 Pa. 179, 188; Leggate v. Korn, 74 Pa. Superior Ct. 383. It was contributing to the payment of an incumbrance upon a property to which it assumed it had a good title as mortgagee, when it had none. The loan was fraudulently obtained by the pretender, Smith, who appropriated the proceeds to his own use, except as part was paid in satisfaction of plaintiffs' liability to pay only the balance due on a debt which, less the sums already paid, then amounted only to $724.42; (cf. Consolidated Building and Loan Association v. Shipley, 95 Pa. Superior Ct. 232, 237). This is the extent of the benefit received by plaintiffs out of the settlement, though the whole transaction resulted in the payment of the $2,000 mortgage which was then satisfied.

The Broad association was not made party to the record. The plaintiffs came into equity for relief against the fraudulent conduct of Smith, the defendant; they are required to do equity: Bispham's Equity, sec. 43. As it appeared that Apex association had paid $724.42 which plaintiffs would have been required to pay to free 2113 Carpenter Street from the lien of the mortgage made by Smith, Sr., the learned chancellor was justified in making its repayment a condition of granting relief to them from the effect of the fraudulent deeds, mortgages and judgments.

It is proper to say that the plaintiffs are not complaining of that condition. But the Apex association, the only appellant, has not shown itself entitled to recover any greater sum from plaintiffs.

Decree affirmed; costs of the appeal to be paid by appellant in addition to the costs imposed on it below.